IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

DOCKET NO. 5:19cr22-MOC-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | **OMNIBUS REPLY TO RESPONSES** |
| v. ) | **TO MOTION FOR PRELIMINARY** |
| ) | **ORDER OF FORFEITURE** |
| (1) GREG E. LINDBERG, ) | |
| (2) JOHN D. GRAY. ) | |

NOW COMES the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, and replies to John Palermo's Response (Doc. 208) and Defendant Greg Lindberg's Response (Doc. 209) to the United States of America's Motion for Preliminary Order of Forfeiture (Doc. 201). The United States requests a Preliminary Order for $1,454,758.45 in funds (hereafter, "the Funds") seized from entities used by Lindberg to hold bribe proceeds. Palermo's Response is essentially an ancillary hearing petition, whereby Palermo, an acquitted officer of the entities, asserts an interest in the Funds. Defendant Lindberg's Response challenges the legal underpinnings for bribery forfeiture and posits that the acquittal of Palermo severs the nexus between the crime and Funds. Since Palermo will be afforded an opportunity to file a petition following issuance of a Preliminary Order, and since Lindberg does not cite law or facts to rebut the law and evidence in the Motion that the Funds are bribe proceeds subject to forfeiture, this Court should reject the arguments in the Responses. Accordingly, this Court should find that the preponderance of the evidence supports a nexus between the crimes and Funds, and issue a Preliminary Order.

**I.      Background**

Following Jury Verdicts against Lindberg and Gray, and acquittal of Palermo, the Government requested a Preliminary Order for Funds seized from the accounts of two entities—

1

North Carolina Growth and Prosperity Alliance, Inc. and North Carolina Growth and Prosperity Committee, Inc. The conspirators had set-up the entities to funnel bribes to the North Carolina Commissioner of Insurance. Lindberg was the sole source of funding for the accounts.

In its Motion, the Government cited numerous statutes and cases in support of the Government's forfeiture request. The Government also cited *eighteen* trial exhibits, including recordings of Defendants and Mr. Palermo. These exhibits, amongst other information in the record, support a nexus between the Funds and crimes, and issuance of a Preliminary Order.

> **II. Palermo's[1] Response does not cite any basis for this Court to decline to find nexus and Palermo requests relief that is either not authorized at-all, or, if appropriate, only appropriate at a later ancillary proceeding.**

Palermo does not offer exhibits to rebut the Government's exhibits. Instead, his Response focuses on his "interests in these funds, however minimal [ . . . . ]" Response (Doc. 208) at Page 1. Palermo complains about his obligations as a result of his role in setting-up the entities, argues that this Court should force the United States to forfeit the entities themselves, and asserts that, by virtue of his role in the entities, he has an interest in the Funds.

As a threshold issue, Palermo's status as to the Funds is now that of a third-party. *See United States v. Porchay*, 533 F.3d 704, 708 (8th Cir. 2008) (once defendant is acquitted in criminal case or the charges against her are dismissed, she has same status as any other third party with respect to property that co-defendant is ordered to forfeit; thus the former defendant's only recourse if she wants to recover property is to file claim in ancillary proceeding).

---

[1] Based on a review of the docket in this case, counsel for Mr. Palermo has not yet appeared on behalf of either North Carolina Grown and Prosperity Alliance, Inc. or North Carolina Growth and Prosperity Committee, Inc. And, the entities have not appeared *pro se*, nor can they since corporations may only appear through counsel. *See, e.g., Gilley v. Shoffner*, 345 F. Supp. 2d 563, 566 (M.D.N.C. 2004). Thus, the United States construes Mr. Palermo as solely appearing in his individual capacity and representing his purported individual interest.

Further, it is the Government's choice to decide what specific assets it seeks the forfeiture of, and Palermo cites to no authority that would indicate he—as either a defendant or third-party petitioner—can dictate that choice. Instead, courts have held that a third party cannot force the Government to pursue a forfeiture. *See United States v. Cone*, 627 F.3d 1356, 1359 (11th Cir. 2010) (per curiam) (third party lacked standing to object when government moved to vacate order of forfeiture with respect to property in which the third party had an interest; third party cannot force government to forfeit property so that it can adjudicate its claim in ancillary proceeding). Thus, even assuming that the law justifies forfeiture of the entities themselves, as opposed to the Funds, Palermo does not cite any law that requires the United States to forfeit the entities, nor is the Government aware of any legal obligation to forfeit the entities. Rather, the case law recognizes that forfeiting *funds* from entities so that the entities may not be used to shield a wrongdoer from liability is entirely appropriate. *See United States v. Simmons*, 154 F.3d 765, 771-72 (8th Cir. 1998) (declining to shield defendant from forfeiture where corporations were used by defendants to perpetuate bribery). Therefore, this Court should reject Palermo's plea for the Court to force the United States forfeit entities that he wittingly created.

In addition, Palermo's arguments about his interest in the Funds are premature since "ancillary proceedings" between the Government and Palermo will begin *after*—and not before—this Court decides the pending issue of whether there is a nexus between the Funds and crimes. *See, e.g.,* 21 U.S.C. § 853(k); *United States v. Oregon*, 671 F.3d 484, 488 (4th Cir. 2012) (noting that ancillary proceeding on third party petitions begins after issuance of preliminary order); *see also United States v. Cox*, 575 F.3d 352, 358 (4th Cir. 2009) ("Rule 32.2 requires the issuance of a preliminary order of forfeiture when the proper nexus is shown, whether or not a third party claims an interest in the property." "Third parties claiming an

3

interest in the property have no right to intervene in the criminal proceeding or to receive notice of the forfeiture proceedings before the entry of a preliminary order of forfeiture."). And, to the extent that Palermo seeks recompense for attorney's fees related to his role in the entities, then Palermo, as an acquitted defendant now standing in the shoes of a third party petitioner, certainly may argue for such recompense by filing a 21 U.S.C. § 853(n)(6)(B) petition in the ancillary proceeding. 21 U.S.C. § 853(n)(3) and (n)(6); *see also Porchay*, 533 F.3d at 708 (former defendant's only recourse if she wants to recover the property is to file a claim in ancillary proceeding).² Of course, the Government may respond in-kind to Palermo's petition by filing a motion to dismiss the petition, or requesting discovery, summary judgment, or any other manner of relief set forth in Fed. R. Crim. P. 32.2(c). But, again, that litigation between Palermo and the United States will only begin *after* this Court enters the requested Preliminary Order.

Therefore, Palermo's arguments are premature, Palermo does not have any right to intervene in this proceeding on nexus or force forfeiture of particular assets, and Palermo's arguments do not form a basis for this Court to decline to issue a Preliminary Order. *See* 21 U.S.C. § 853(k); *Cox*, 575 F.3d at 358; *cf. United States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 477 (5th Cir. 2007) (en banc) (§ 853(k) ensures an orderly process that relieves Government of the burden of having to defend the forfeiture against third party claims during an ongoing prosecution while protecting the third party's right to a day in court in ancillary proceeding); *United States v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007) (forcing third party

---

² As for the entities themselves that were nominally on the accounts from which the Government seized the Funds, the Third Circuit has recognized that a third party who holds title to property purchased with criminally forfeited kickback proceeds could not challenge a preliminary order but could file an ancillary petition. *United States v. Nicoll*, 711 Fed. App'x 108, 110 (3d Cir. 2017) (discussing criminally forfeited property titled to individual who was not the defendant).

4

to wait until ancillary proceeding to contest forfeiture, rather than granting immediate hearing on a motion to vacate a seizure under § 853(f), does not violate the third party's rights).

### III. Lindberg does not cite a legal basis or evidence for this Court to decline to find a nexus between the Funds and Lindberg's crimes.

In essence, Lindberg argues in his Response that (1) the law does not authorize proceeds forfeiture when a defendant hides bribe money in an entity that he funds and (2) the acquittal of a co-conspirator renders a defendant like Lindberg innocent of any acts involving that co-conspirator. Tellingly, Lindberg does not cite cases or facts in support of his arguments.

#### A. Ample law supports forfeiture under the circumstances of this case.

To the contrary, the law, including law in this District, authorizes forfeiture. Indeed, the proceeds forfeiture law at 18 U.S.C. § 981(a)(1)(C) clearly mandates forfeiture of bribe proceeds. And, despite Lindberg's protestations otherwise, the Government has never argued for forfeiture of the Funds as facilitating property pursuant to Section 981(a)(1)(B). Instead, the United States made clear in its Motion that the law authorizes forfeiture of bribe proceeds, paid after the offer of a bribe, not directly to the bribe recipient but to an entity used to funnel bribes.

And, although Lindberg is correct that the United States cites to a nonbinding lower court opinion from Tennessee as one case in support of its legal argument, Lindberg fails to note that this Court has already favorably cited to the Tennessee case in a Western District of North Carolina murder-for-hire case involving applicability of the proceeds forfeiture laws to forfeiture of money handed-over to undercover officers acting as contract killers. *United States v. Davis*, No. 3:15CR76, Order of Forfeiture at Doc. 51, p. 2 (W.D.N.C. Aug. 6, 2015) (discussing

5

preliminary order of forfeiture in murder-for-hire case), *citing*, *United States v. $13,500 in U.S. Currency,* 2008 WL 5191209 (W.D. Tenn. Dec. 10, 2008).[3]

Perhaps more importantly, Lindberg fails to note that *United States v. Farkas*, 474 Fed. Appx. 349 (4th Cir. 2012), actually supports the forfeiture of the Funds since the circumstances here—involving Funds traceable to Lindberg himself and his crimes—satisfy *Farkas*. *Farkas*, 474 Fed. Appx. at 359-60 (discussing the "but for" test applicable in forfeiting funds); *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 712 (E.D. Va. 2005) (same). Specifically, in *Farkas*, a case on which both the Government and Lindberg rely, the Fourth Circuit mandates forfeiture of traceable proceeds with a causal connection to the crime of conviction. *Id.*; *see also Nicoll*, 711 Fed. App'x at 110 (Third Circuit discussing criminally forfeited property purchased with kickback proceeds and titled to individual who was not the defendant). There can be no doubt, based on the evidence and information on the record, and under a preponderance of the evidence standard, that the Funds are traceable back to Lindberg and to payments that he made along with the offer of a bribe. *Compare* Exs. 118a and 121a (discussion with Commissioner about payment through entities) *with* Exs. 68 and 69 (evidence on establishment and funding of entities during same time period as discussion with Commissioner).

Nonetheless, Lindberg proposes an alternate universe in order to contend that forfeiture is not appropriate here. In that universe, there is not a "but for" connection between proceeds and crime *even when* a defendant conspires with others to pay bribes, creates entities through which he will route bribes, effectuates the offer of a bribe to complete the offense of bribery, and funds

---

[3] Further, the fact that Lindberg would suggest this Court decline to follow another district court's opinion on the basis that it is simply nonbinding—without offering any other guiding authority to the contrary—demonstrates how legally weak Lindberg's argument on this issue is. But, non-binding does not mean inapposite, and as other courts in this District have done, this Court should find *United States v. $13,500 in U.S. Currency* persuasive.

6

the entities. In other words, were the Court to accept Lindberg's proposition, a sophisticated purveyor of bribes and fraud, even if caught, *never forfeits anything*.

This would be an absurd result. It would be contrary to case law on the completion of bribery offenses upon the offer or promise to pay. *See United States v. Esquenazi*, 752 F.3d 912, 936 (11th Cir. 2014) (reasoning that Foreign Corrupt Practices Act bribery offense was complete upon offer or promise to pay, and that subsequent transactions were transactions in proceeds and thus were concealment money laundering offenses). And, the result would be contrary to case law on forfeiture, including Supreme Court and Fourth Circuit case law emphasizing the punitive and deterrent nature of forfeiture. *See United States v. Kaley,* 571 U.S. 320, 323 (2014) (noting that forfeiture serves to punish and deter future wrongdoing); *United States v. Martin*, 662 F.3d 301, 309 (4th Cir. 2011) (purpose of forfeiture is "to deprive criminals of the fruits of their illegal acts and deter future crimes"). Perhaps most importantly, the complete shielding of sophisticated bribe payers from forfeiture would be contrary to common sense.

This Court should not shield a defendant like Lindberg from forfeiture because to do so would be to reward defendants for whom power through financial success is *the* motivating factor for crime. Lindberg cites no legal reason why this Court should decline to find a nexus, and there is none. Rather, the Government has established its forfeiture nexus burden.

**B. Palermo's acquittal does not sever the nexus between crimes and Funds.**

Having failed to convince the Jury of his innocence, Lindberg now also uses this forfeiture proceeding, not only to attack nexus, but also to try to mitigate his criminal culpability. Lindberg argues as follows. Although the Jury found Lindberg and Gray guilty beyond a reasonable doubt, the Jury did not find Palermo guilty beyond a reasonable doubt. Palermo was involved in, among other aspects of the scheme, the establishment of the entities that Lindberg funded with $1.5 million for the Commissioner. Since Palermo was acquitted, Lindberg *must* be

7

innocent of conduct related to the $1.5 million. *Ergo*, the $1.5 million is not connected by the lower preponderance of the evidence burden to the crimes. Lindberg's logical leaps are extraordinary. This Court should reject his unfounded arguments for the following reasons.

First, the acquittal of Palermo does not mean that the Funds were not part-and-parcel of the crimes of which the Jury convicted Lindberg. The Jury heard ample evidence on the funding of the entities pursuant to the scheme and on the plans of Lindberg, Gray, and Palermo to fund the entities. Then, after hearing such voluminous evidence, the Jury received a copy of an Indictment that laid out, in painstaking detail, the funding of the entities. After the Jury heard and reviewed that evidence and the Indictment, the Jury did, in fact, *convict Lindberg and Gray*. To be sure, the Jury acquitted Palermo, but the Jury could have done so for a variety of reasons totally unrelated to whether there is a nexus between the Funds and the conviction of Lindberg. For example, a juror might have hung on whether there was reasonable doubt as to a single item of evidence pertinent to Palermo's criminal intent beyond a reasonable doubt, yet still firmly believed that the transaction in the Funds was a crime. In any event, the role of the Court and parties is not to, at this point, go behind the Jury Verdicts and attempt to recreate the thoughts of twelve citizens performing their civic duty. The simple fact is that, absent more information about the Jury's thought process—information that the parties and Court cannot and should not seek since the Verdict speaks for itself—the acquittal of Palermo provides little to no information about the nexus of the Funds to Lindberg's crimes.[4]

---

[4] Even if acquittal on the beyond a reasonable doubt standard was informative as to the involvement of the Funds in the crimes, then, as the Eleventh Circuit Court has persuasively written, since the lower preponderance of the evidence burden of proof applies to forfeiture, acquitted and uncharged conduct proven by a preponderance of the evidence still may form the basis of a forfeiture order under certain circumstances. *See United States v. Holland*, 722 Fed. App'x 919, 929 (11th Cir. 2018).

8

Second, Lindberg cannot waive a finding by the Jury on forfeiture, then later contest forfeiture using rank speculation as to what the Jury's purported conclusions—under a different preponderance of the evidence standard—*would have been* in regard to the Funds. If Lindberg wanted the Jury's thoughts on forfeiture, then he should have sought a Jury finding on the issue. Indeed, in anticipation that Lindberg might request a jury on forfeiture, the Government had prepared a jury argument on forfeiture and had, well in advance of trial, supplied the Court and parties with Proposed Jury Instructions and a Special Verdict on forfeiture (Doc. 123). So, all that Lindberg had to do if he wanted the Jury to decide forfeiture was argue his forfeiture case to the Jury. Yet, when given the opportunity, Lindberg elected for *this Court, and not the Jury*, to decide nexus. Thus, to the extent that Lindberg waived a finding by the Jury on forfeiture but now invites the Court to invoke the Jury acquittal of Palermo here, this Court should decline such invitation. Lindberg cannot now change his mind or muddy the waters through unsupported speculation on the Jury's intent. Specifically, this Court should not permit a Defendant who has waived a Jury finding on forfeiture, yet is dissatisfied with his conviction,[5] to then invoke questions about the Jury verdict as a means to challenge the nexus between seized Funds and Defendant's crime. To do so is to impermissibly allow Lindberg to re-litigate the legality of his conduct in the forfeiture phase of the case. *See United States v. Warshak*, 631

---

[5] Also of note, although not discussed at-length in Lindberg's Response, Lindberg was convicted of a conspiracy to commit a scheme to defraud and, as an individual guilty of scheme and conspiracy, he is liable for the entirety of the conspiracy, and not finite acts of his choosing. *See, e.g., United States v. Lo*, 839 F.3d 777, 792-94 (9th Cir. 2016) (government is entitled to a forfeiture money judgment in the amount of the proceeds obtained as a result of the entire fraud scheme even though defendant pleaded to only some of the fraud counts); *United States v. Jafari*, 663 F. App'x. 18 (2d Cir. 2016) (in healthcare fraud prosecution under 18 U.S.C. § 1347, defendant was correctly assessed the proceeds of billings not directly charged in the indictment, or contained in counts on which she was acquitted where government established underlying criminal conduct by preponderance of the evidence); *United States v. Venturella*, 585 F.3d 1013, 1015, 1016–17 (7th Cir. 2009) (forfeiture in a mail fraud case "is not limited to the amount of the particular mailing but extends to the entire scheme"; defendant's guilty plea to one substantive count involving $477 rendered her liable for money judgment of $114,000); *United States v. Hailey*, 887 F. Supp. 2d 649, 653 (D. Md. 2012) (although only $2.9 million was obtained from the 8 substantive counts on which defendant was convicted, he was required to forfeit the $9.1 million obtained from the entire scheme).

F.3d 266, 331 (6th Cir. 2010) (affirming district court's refusal to let defendant introduce evidence tending to show his conduct was not illegal; in the forfeiture phase the legality of the conduct is "no longer a live issue"; the only question is the nexus between the conduct and the offense).

Instead, this Court's decision now hinges on whether the evidence establishes a forfeiture nexus by a preponderance of the evidence. *See, e.g., Holland*, 722 Fed. App'x at 929. In response to the Government's Motion, Lindberg had the opportunity to introduce his own evidence and argument, beyond unsubstantiated speculation about the Jury, on the purported untainted nature of the Funds. He failed to do so. Conversely, the Government has demonstrated the evidence is sufficient to meet its burden that the Funds are subject to forfeiture and that entry of the Preliminary Order is appropriate.

WHEREFORE, the United States requests that this Court find by a preponderance of the evidence, based on the information, evidence, and law set forth in the Government's Motion, that there is a nexus between the Funds and convictions, and issue the Preliminary Order of Forfeiture.

Respectfully submitted, this, the 27th day of March, 2020.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

**s/ Benjamin Bain-Creed**
Florida Bar # 0021436
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Facsimile: (704) 344-6629
Email: benjamin.bain-creed@usdoj.gov
